BANK OF ITHACA *vs.* KING.

*Moneyed corporations* are not liable to be assessed to work on the *public high-ways;* within the purview and meaning of the act, they are not subject to such assessments.

A CERTIORARI was issued in this case to a justice of the peace of the town of Ithaca, in the county of Tompkins, to bring up the proceedings had before him in reference to the imposition of a *fine* upon the President, Directors and Company of the Bank of Ithaca, for their neglect to appear and work upon the highways, either in person or by substitutes, in pursuance of notice served by an overseer of highways. The justice returned, that on the second day of October, 1833, Samuel King, an overseer of highways in the village of Ithaca, made complaint on oath before him, that the President, Directors and Company of the Bank of Ithaca, who were assessed to work on highways in the said village, had been duly notified to appear on the said second day of October, at 8 c'cloce in the forenoon, at the bridge across the Cayuga inlet in the said village, for the purpose of working 49 days on the highways; and that they had *neglected* to appear, pursuant to such notice, either in person or able bodied men as substitutes, and had not paid any commutation money in lieu of attendance. That on receiving such complaint he issued a summons, directing a constable to summon the President, Directors and Company of the Bank, to appear before him and show cause why they should not be fined for neglecting to perform 49 days' work on the highways. The summons was served on the *cashier* of the bank, and the corporation appeared before the justice by their attorney, who admitted the service of the notice to appear and work, but *objected that the corporation was not liable to be assessed to work on the public highways.* The justice overruled the objection, and imposed a *fine* of *forty-nine dollars.* The corporation sued out a *certiorari,* removing the proceedings into this court. The cause was submitted to the court on written arguments by

*A. Dana*, for the Bank.

*D. B. Stocholm*, for the Trustees of the village.

UTICA,
July 1834,

Bank of Ithaca
v.
King.

*By the Court*, SAVAGE, Ch. J.   The question in this case is whether a corporation can be compelled to work on the highways ? The statement of the question in this form seems to admit of but one answer, and that in the negative.  A corporation has been said to have no soul ; and surely it has no corporeal body.  It has no material existence ; it is incapable of performing labor, and therefore cannot be compelled to perform an impossibility.  The argument in opposition to this view of the case is, that the law imposes merely a tax, and that corporations are liable to pay taxes ; that as work on the highways may be commuted for, though the corporation cannot perform manual labor in person, it can pay the commutation money by its agents.  The question then is, whether the statutes require a *tax* or a personal *service?*

" All moneyed or stock corporations deriving an income or profit from their capital, or otherwise, shall be liable to taxation on their capital, in the manner hereinafter prescribed." 1 R. S. 414, § 1.  By the decisions of this court, banks have been held liable to pay village taxes, as well as town, county and state taxes ; but the question now presented has never been decided.  A tax may be defined to be a sum of money to be paid by the owners of property severally, yearly or otherwise, to compose a public fund for the purpose of defraying public expenses.  The statute in relation to highways does not treat the labor assessed to be laid out on the highways as a tax ; there is no assessment of any sum of money ; no collector is appointed ; and there is no mode provided for enforcing the collection by a levy upon property.  When the object is to raise money, the mode of assessment and collection is always prescribed.  Again ; by the article which treats of the persons *liable to work* on highways, and the making of assessments therefor, it is enacted that " every person owning or occupying land in the town in which *he* or *she* resides, and every male inhabitant above the age of twenty-one years, residing in the town where the assessment is made, *shall be as-*

*sessed to work on the public highways* in such town, 1 R. S. 505, § 19 ; not to pay a tax, or raise money to be appropriated to procuring labor on the highways. It is argued for the plaintiffs, and I think with force, that though the word *person* would, if alone and unexplained, include corporations, were the other provisions of the statute consistent with such construction, yet, when the legislature use the words *he* or *she* they have explained what kind of persons are intended as capable of performing manual labor. By section 24, the assessment is not of money, but of " *days' work*." The overseers of highways are to give notice to all persons *assessed to work*, of the time and place of appearance, and *with what implements*, § 32 ; and such person *shall work*, but he may elect to commute at the rate of $62\frac{1}{2}$ cents for each day, § 35. The commutation is not the subject of assessment ; it is not the duty required by the statute ; it is only a mode by which the labor may be dispensed with. The labor of the person assessed is as much required as a personal service as is the performance of military duty ; the only difference is, that in the case of labor on the highway, the person assessed may commute or send a substitute ; but he cannot be compelled to pay, provided he chooses to perform the labor in person. " Every person assessed to work on the highways and warned to work, may appear in person, and shall actually work eight hours in each day." § 38. It is no answer to this argument that he may appear by an able bodied man as a substitute. That is like the commutation, a mode by which the person assessed may avoid the performance of the personal service ; but even that provision shows that it is the *personal labor of the person assessed which is the subject of assessment;* and as such a requirement of a corporation is an impossibility and an absurdity, therefore we are warranted in saying the legislature never intended to include corporations in such assessments. Again, the statute requires that the person assessed shall have 24 hours notice. How can such notice be served on a corporation ? It cannot be served upon the president, or cashier, or any other officer or servant, for the statute does not authorize any such service in this case ; nor is it any part of the duties of such officers or servants to perform such labor.

It seems to me unnecessary to pursue the subject farther. Every provision in the statute contemplates personal service : not a pecuniary contribution or tax.

The judgment of the justice must therefore be reversed.