(79 South. 113)
Ex parte CITY OF BIRMINGHAM.

BEST v. CITY OF BIRMINGHAM.

(6 Div. 768.)

(Supreme Court of Alabama. March 23, 1918. Rehearing Denied May 9, 1918.)

1. MUNICIPAL CORPORATIONS ⬥672—STREET TAX—ORDINANCE—VALIDITY.

An ordinance requiring male inhabitants of a city, between the ages of 21 and 45, to pay a street tax of $5 a year, or in lieu thereof to work six days on the streets, was authorized by Code 1907, § 1336, providing that inhabitants of any city may be required to pay a street tax not exceeding $5 a year, and the fact that such ordinance gave option to pay by working on streets did not render it void.

2. MUNICIPAL CORPORATIONS ⬥524—STREET TAX—POWERS OF CITY.

Code 1907, § 1251, providing that municipal corporations shall have the power to adopt ordinances and resolutions not inconsistent with law to carry into effect or discharge the power and duties conferred upon them, and to provide for the safety, preserve the health, promote the property, and improve the morals, comfort, and convenience of the inhabitants of the municipality, and enforce obedience by fine or imprisonment, or both, and Acts 1915, p. 296, § 6, containing similar provisions, authorized an ordinance providing for fining a person delinquent in his street tax.

3. MUNICIPAL CORPORATIONS ⬥672 — TAXATION—NATURE OF "TAX."

Under Code 1907, § 1336, providing that inhabitants of any city may be required to pay a street tax not exceeding $5 a year, the burden imposed is not a "tax," but a commutation of

the public and personal duty to work or maintain streets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax.]

4. CONSTITUTIONAL LAW ☞83(3) — STREET TAXES—ENFORCEMENT.

Ordinance requiring inhabitants within certain age limits to pay $5 a year in commutation of duty as to maintenance of public streets, and providing for enforcement by fine, does not create debts, and the enforcement thereof does not amount to imprisonment for debt; the penalties imposed being in the nature of punishment for refusal to perform public duties prescribed by law.

5. MUNICIPAL CORPORATIONS ☞57—IMPLIED POWERS.

While municipal corporations have no inherent taxing power, they possess implied or inherent power as to other subjects.

6. MUNICIPAL CORPORATIONS ☞57—IMPLIED POWERS.

Municipal corporations can exercise those powers only which are granted in express words, or fairly implied as incident to those expressly granted and those essential to the declared objects and purposes of the corporation, and not those which are simply convenient, but not indispensable.

7. MUNICIPAL CORPORATIONS ☞592(1)—ORDINANCE IMPOSING STREET TAX—VALIDITY.

Code 1907, § 1336, authorizing an ordinance requiring inhabitants of a city between the ages of 21 and 45 to pay a street tax of $5 a year or perform labor on the streets and in default thereof imposing a fine, is not in violation of Const. 1901, § 89, providing that Legislature shall have no power to authorize any municipal corporation to pass any laws inconsistent with general laws of the state.

8. MUNICIPAL CORPORATIONS ☞592(3) — STREET TAX—ORDINANCE—VALIDITY.

An ordinance requiring inhabitants of a city between the ages of 21 and 45 to pay street tax of $5 a year or perform labor on the streets, and imposing a fine for default of such payment or performance, does not provide a summary or different mode of collecting taxes, which is in conflict with general laws of the state.

Certiorari to Court of Appeals.

Frank F. Best was convicted of violating a municipal ordinance, and appealed to the Court of Appeals where conviction was reversed and cause remanded (78 South. 100). The City petitioned for certiorari. Writ granted, and judgment of the Court of Appeals reversed, and cause remanded.

M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellant. Horace C. Wilkinson, of Birmingham, for appellee.

MAYFIELD, J. The sections of the ordinance here involved are those numbered 2 and 4, and they read as follows:

"Sec. 2. Be it further ordained that every male inhabitant of the city of Birmingham, between the ages of 21 and 45 years, shall, on or before the first day of March, 1917, and every year thereafter, pay to the city comptroller, for the use of the city of Birmingham, a street tax of five dollars per annum: Provided, that any person liable for a street tax, may in lieu of said tax, work six days on the public streets of the city of Birmingham, under the direction of the street commissioner, by March 1st of each year."

"Sec. 4. Be it further ordained, that any person liable for the street tax under the provisions of this ordinance, who fails to pay the same, or discharge the same in labor in the manner prescribed herein, shall, upon conviction, be fined not less than five dollars nor more than ten dollars."

The Court of Appeals thus states the question presented to it on appeal:

"Has the city of Birmingham the authority to provide by ordinance for the imposition of a fine on a person who is subject to street tax, and fails to pay it or discharge it in labor?"

In a full opinion, after citing and reviewing many authorities, the Court of Appeals answers this question in the negative, declaring the ordinance void, and reversing the judgment of conviction of the criminal court, and renders a judgment discharging the accused. We are of the opinion that the Court of Appeals erred in the rendition of that judgment, and that the judgment of conviction should be affirmed; there being no question other than the validity of the ordinance.

The Court of Appeals holds that section 1336 of the Code of Alabama repealed that part of the charter of the city of Birmingham which authorized it to pass the ordinance in question, and that this Code provision does not authorize the city to make or enforce the ordinance in question. It also holds that neither section 1251 of the Code, nor section 6 of the Omnibus Bill (Acts 1915, pp. 296, 297), authorizes section 4 of the ordinance. The Court of Appeals fell into error in each of these holdings. Section 1336 of the Code of Alabama did not deprive the city of Birmingham of the power to pass the ordinance in question. The ordinance, on the contrary, is in part expressly authorized by the section of the Code. It is therefore not necessary to decide whether or not the section of the Code repealed the provision of the city's charter, which would have authorized the ordinance.

[1, 2] It is true, as pointed out by the Court of Appeals in its opinion, that section 1336 of the Code does not expressly authorize the city to require its inhabitants to work on the streets, nor expressly provide that the city may accept labor in lieu of the $5 in money which is expressly authorized to be assessed and collected. It does not, however, deny the right or power to accept the labor in lieu of the payment in money, nor does it deny the city the right or power by appropriate ordinance to enforce the payment of the $5, by fine or penalty, in case the inhabitant who is liable fails or refuses to either pay the money or perform the labor as is provided in the ordinance. It is true, as the Court of Appeals says, that section 1336 of the Code does not provide for the enforcement of the payment of the $5 called a tax, either by fine or penalty, by work on the streets, or otherwise. It was not the object or purpose of this section of the Code to authorize an ordinance to enforce the payment of the $5. It only purports to authorize an

ordinance to make the levy, or to fix the liability to pay the $5. It does authorize section 2 of the ordinance, above set forth; but it does not purport to authorize section 4 of the ordinance.

Section 1251 of the Code, or section 6 of the Omnibus Bill (Acts 1915, p. 296), does authorize section 4 of the ordinance. Hence the city did have express statutory authority to pass an ordinance levying the $5 upon inhabitants between the ages of 21 and 45 years, and to enforce obedience thereto by the fine and punishment therein specified. Surely the ordinance is not rendered void merely because it provides that the payment of the $5, at the option of the inhabitant, may be discharged by labor on the streets. The option is in favor of the inhabitant, and not of the city. The ordinance does not attempt to compel the inhabitant to work on the street, rather than to pay the $5; but he is given the option to pay the $5 by work if he chooses so to do. It is only upon his failure or refusal to do either that the ordinance provides for a fine and punishment.

The Court of Appeals is also in error in holding that there is no authority in this state for a municipality to require its inhabitants within proper ages to work or maintain the streets of the city. It is true that the statutes do not provide that the inhabitants of the municipality may be required, in the first instance, to work the streets; but they provide that the inhabitants may discharge this public duty by the payment of $5, and if he fails or refuses to either pay the $5, or work on the streets in lieu thereof, he may be subjected to fine or other punishment by ordinance like the one in question.

[3] The Court of Appeals treats the question as if the $5 mentioned in the statute and ordinance was a mere tax and nothing more, and holds that without express statutory authority its payment could not be compelled or coerced, except by an ordinary civil suit. If it is a mere tax, this is true; but it is not a tax in this sense, although it is called a "tax" in the statute, in the ordinance, and in common parlance. As has been often pointed out by this court, it is not a tax in this sense, though it is called a "street tax" in the statutes and ordinances. The statute itself, and all similar ones, would be unconstitutional if the payment of the $5 could be justified only as a mere tax. It could not, of course, be justified as a poll tax, because the Constitution limits the amount of the poll tax to $1.50, and requires the proceeds thereof to be paid into the public school fund. Const. 1901, §§ 194, 259. It is not a property tax, and cannot be justified as such. It does not purport to be a franchise or license tax. It is, in law, a commutation of the public and personal duty to work or maintain the public roads, streets, or highways. This was pointed out by this court, at an early date, in the case of Lewin v. State, 77 Ala. 45, as to the phrase "road tax," and what was there said as to that expression is here exactly apt to the construction of "street tax":

"In our opinion, the term 'road tax' was intended here to mean road duty. It is used in connection with the cognate subjects of military duty and jury duty. In its strict sense, there is no such assessment as a road tax under our laws. The nearest approach to it is the additional poll tax which is sometimes imposed in city charters as the price of exemption from liability to work on the streets of a city."

In later cases the same construction is applied, notably in Whitt v. City of Gadsden, 160 Ala. 271, 272, 49 South. 682, where it is said:

"Street tax in the city is a substitute for road duty in the rural districts. The law provides that 'no person * * * is liable * * * to work more than ten days in any one year.' Code 1907, § 5779. This court has said that 'the payment of street tax in an incorporated town or city is a substitute for the performance of road duty, and it is not the intention of the law that a man shall be liable for both for the same period.' Taylor v. State, 147 Ala. 131, 132, 41 South. 776."

In a more recent case—that of Toone v. State, 178 Ala. 70, 73, 74, 59 South. 665, 666 (42 L. R. A. [N. S.] 1045)—speaking of a similar tax as to public roads, it was said:

"If this act provides for the levy of a tax, and not the imposition of a duty essential to citizenship, then it is not such a uniform ad valorem one as is required by section 211 of the Constitution of 1901, and sections 7, 8, and 15 of the act would fall under the influence of Smith v. Commissioners' Court, 117 Ala. 196, 23 South. 141. It may be conceded, however, that the act is not intended as the levy of a tax as covered by section 211 of the Constitution, but was enacted for the purpose of requiring persons to discharge their duties as to the maintenance of the public roads of the county. The authorities are numerous to the effect that a law requiring persons to work upon the public roads, in person or by a substitute, or authorizing a fixed sum by way of commutation, is not unconstitutional, and is not double taxation, even where the road is kept up in part by taxation. The theory is that requiring such labor is not taxation at all, but is the exaction of a public duty. Elliott on Roads and Streets (3d Ed.) § 480, and cases cited in note; 37 Cyc. 708, and note 16."

"The act in question cannot be construed as providing for a license tax, so as to bring it within the protecting influence of Kennamer v. State, 150 Ala. 74, 43 South. 482." 178 Ala. 75, 59 South. 666 (42 L. R. A. [N. S.] 1045).

If the ordinance in question attempted to compel the inhabitant to perform so many days' labor on the streets, then it might be void, because not authorized by legislative authority, the statute only authorizing a levy of $5 as a commutation of the personal duty to work or maintain the streets; but the ordinance does not so attempt to compel the inhabitant to actually work on the street. It merely gives him the option to so work, in lieu of paying the $5 in commutation of this public duty. It is very true that the inhabitants of cities do not actually work the public streets, and are not by statute or ordinances requir-

ed so to do, but are allowed by law to commute the duty so to do, by paying $5—the option being given them to either discharge this public duty by actual labor, or commute it by the payment of the $5.

[4] Section 1336 of the Code is ample authority to justify the ordinance requiring inhabitants within the age limits specified to pay $5 in commutation of this duty as to the maintenance of the public streets, and the mere fact that he is given the option to pay the $5 by working on the streets does not render the ordinance void. Section 1251 of the Code and section 6 of the Omnibus Bill (Acts 1915, p. 296) are ample authority to justify the city in passing section 4 of the ordinance, which merely provides for the enforcement of section 2 thereof. Such ordinances do not create mere debts, nor does the enforcement thereof amount to imprisonment for debt; the penalties imposed being strictly in the nature of punishment for failure or refusal to perform public duties defined and prescribed by law. Butler v. Perry, 240 U. S. 328, 36 Sup. Ct. 258, 60 L. Ed. 672; Toone v. State, 178 Ala. 73, 59 South. 665, 42 L. R. A. (N. S.) 1045.

[5] The Court of Appeals fell into error, in holding that municipal corporations have no implied or inherent powers. The court was evidently led into this error by considering the requirement to pay $5 as the imposition of a mere tax. It is true that municipal corporations have no inherent taxing power, and that all the power they can exercise, as to taxation, is that which the state has expressly delegated to them; but as to other subjects they do possess and exercise implied, as well as express, authority. The rule has been thus stated by this court:

" 'It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably conferred.' Dillon's Munic. Corp. (4th Ed.) § 763. Or, as sometimes more tersely stated: 'Municipal corporations have no implied powers of taxation; they have only such as are granted.' " Boyd v. Selma, 96 Ala. 144, 148, 11 South. 393, 394 (16 L. R. A. 729).

As to power and authority other than that of taxation (and probably some not necessary to be here mentioned), municipal corporations are clothed with powers implied or incidental. The rule in such cases has been thus stated by this court: The jurisdiction of incorporated cities and towns is not limited to the express grants of authority. They have many incidental powers. Mayor & Alderman of Mobile v. Yuille, 3 Ala. 137, 36 Am. Dec. 441; Intendant & Council of Town of Marion v. Chandler, 6 Ala. 899. But these incidental powers must be germane to the purpose for which the corporation was created. They will not be enlarged by construction, to the detriment of indivi-

dual or public rights. Pennell v. Grubb, 13 Pa. 555; March v. Com., 12 B. Monroe (Ky.) 29; Hunt v. Acre, 28 Ala. 580. In Ex parte Burnett, 30 Ala. 461, we considered the question of the powers of corporations, and we there held that such bodies can only exercise such powers as are expressly conferred on them, and such as are necessary and proper to carry into effect the granted powers. To these we may add:

"The creation of a corporation, for a specified purpose, implies the power to use the necessary and usual means to effect that purpose." Angell & Ames on Corporations, 200; City Council v. Montgomery & Wetumpka Plank-Road Co., 31 Ala. 82.

[6] Municipal corporations can exercise those powers only which are granted in express words, or fairly implied as incident to those expressly granted, and those essential to the declared objects and purposes of the corporation, and not those which are simply convenient but not indispensable. Cleveland Co. v. Greenville, 146 Ala. 559, 41 South. 862.

[7] There is nothing in the statute and the ordinance in question which is inconsistent with the general laws of this state, and neither involves a violation of section 89 of the Constitution.

[8] As before stated, the ordinance does not create or provide for a tax, nor for the enforcement of the payment of a tax, but provides for the commutation of a public duty, and fixes penalties for failure or refusal to so commute such duty, and consequently does not prescribe imprisonment for debt, nor does it provide a different or summary mode for collecting taxes, which is in conflict with the general laws of the state.

It results that the decision of the Court of Appeals is erroneous, and that the ordinance in question is valid. The writ of certiorari is granted, and the judgment of the Court of Appeals is reversed, and the cause is remanded.

Writ granted, judgment reversed, and cause remanded. All the Justices concur.