## STREET v. EASON, et al.
Case No. 77-2872-CA (L) 01-A
Fifteenth Judicial Circuit, Palm Beach County
March 28, 1979

William R. Staab, for plaintiff.

Charles C. Chillingworth, for defendants.

T.P. POULTON, Circuit Judge.

The cause has been heard upon the pending motions by the defendants for judgment *non obstante verdicto,* or in the alternative, for new trial and the amendment thereto served January 11, 1979. The motion for judgment *non obstante verdicto* is denied.

Concerning the motion for new trial, I am of the view that the defendants are correct in their point three as stated in their undated memorandum of law in support of defendants' post-trial motions filed by the court on January 11, 1979. (That is the memorandum which provided the format or outline of the several post-trial motions hearings.) That is, I believe the defendants' argument at point three is correct if there was an objection timely made concerning the different treatments of the witnesses Trap and Currier. But, in any event, the court believes that in the total scope of the matter the error, if any, was harmless.

Next, concerning point seven of that same memorandum, the court is of the view that the verdict forms submitted to the jury were insufficient (or, if sufficient, that there was inadequate instruction concerning the award of compensatory damages). Based upon the authority of Standard Jury Instructions 6.11 and *City of Hialeah v. Hutchins*, 166 So.2d 607 (Fla, 3rd DCA 1964), we should somehow have made it clear to the jury that concerning compensatory damages, one total award should have been made against the two defendants. If no new trial were to be granted, the court would correct that deficiency by entering a judgment based upon the verdicts as follows: a judgment against both defendants for $10,000 for the compensatory damages; a judgment against the defendant Currier for $10,000 for punitive damages; and a judgment against the defendant Easton for $30,000 for punitive damages.

Save for one remaining point, the other grounds asserted in the motion for new trial are believed to be without merit.

The court is of the view that the remaining point — the inadequacy of instruction concerning definition of malice — requires the granting of the motion for a new trial. At the time of presentation of proposed instructions, the court determined to "give" Standard Jury Instruction MI4.4C on the issue. I thought then, and I think now, that it is a fair statement of the holding in *New York Times v. Sullivan*[1]. My set of standard instructions notes that the instructions in question were revised on March 23, 1977 and April 28, 1978. At the time of trial, I understood *New York Times v. Sullivan* to have been and to be the lead case in the area; and coupling that fact with the fact that the Supreme Court of Florida had recently promulgated the instruction in question, I rather summarily denied the other instructions on the subject proposed by the defendants. I am now convinced that the failure to modify the "Standard" and to give some of those requested by the defendants was a mistake. It seems to me that United States Supreme Court cases later than *New York Times v. Sullivan* have substantially modified the holding in that

---

[1] I will omit citations in this opinion because I know they are at the fingertips of the attorneys in the case and of any appellate court which might review the matter.

case — in the direction of providing even greater protections for the press. The best example of that is *St. Amant v. Thompson,* decided by the United States Supreme Court in 1968. The holding in *St. Amant* would, in my opinion, require a revision of standard instruction 4.4C. It would require the deletion of the words at the end of that instruction: "or without regard for its truth or falsity". There is an interesting discussion of *St. Amant* in the second *Vandenburg*[2] case. The discussion in the second *Vandenburg* at page 1026 is helpful:

> "We assume arguendo that the statement at issue contained inaccuracies. As stated above, in order to establish actual malice under *Sullivan* standards, the plaintiff must show respondent had actual knowledge or falsity or reckless disregard of same. This is not a normative conclusion that the publisher should have known of the falsity of the statement. Rather, evidence — direct or circumstantial — of the publisher's subjective awareness is required. If plaintiff cannot show the publisher knew that the publication was false, he must show reckless disregard. '(R)eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication'." (Citing *St. Amant*)

Stated another way, *St. Amant*, as commented on in *Vandenburg*, eliminates concepts of "should have known" or "without regard for its truth or falsity". It requires a showing either that the publisher knew that the publication was false or that he in fact entertained serious doubts as to the truth of his publication.

The second *Vandenburg* giveth and it taketh away. The very next sentence from the second *Vandenburg* reads:

> "On the other hand, when the story is not 'hot news', as in the case here, the investigation must be more thorough, and 'actual malice may be inferred when the investigation . . . was grossly inadequate in the circumstances."

It appears that the Federal courts are indicating that in such a case — a case in which the investigation by the reporter was grossly inadequate — the proofs are sufficient to submit the case to a jury over a motion for directed verdict — but the court must charge the jury to the effect

---

[2]The first *Vandenburg* case is *Vandenburg v Newsweek,* 441 F.2d 308; the second *Vandenburg* case is at 507 F.2d 1024.

that the publisher either knew the publication was false or entertained serious doubts as to the truth.

The plaintiff argues that *St. Amant* does not really change the ruling in *New York Times v. Sullivan* but only explains or clarifies it. I believe that Justice Fortas' dissent in *St. Amant* makes it clear that *St. Amant* is a departure from *New York Times v. Sullivan.* In any event, it now appears to me that under the most recent decision of the United States Supreme Court, an instruction under *New York Times v. Sullivan's* language is no longer adequate.

It may very well be that if we had charged the jury as required by *St. Amant* and further charged them as permitted by *Vandenburg*, there would have been the very same result; however, as I understand it, a failure to instruct properly on a point at the heart of the liability question of the case — as we have here — requires a new trial.

I would like to note in passing that in addition to the law review articles on the issuer submitted by the attorneys for the defendants, the court has found helpful *Eldridge, The Law of Defamation*, at page 254, et seq., and the article by James C. Goodale reported at page 23 of the *National Law Journal* for Monday, February 5, 1979.

There is one further point that deserves comment here. What should a Florida trial judge do when he believes a Florida Supreme Court opinion is at odds with a federal decision on a United States Constitutional point? The decisions make it clear that he is obliged to follow the Federal decisions. In any event, the standard instructions promulgated by the Florida Supreme Court are not *required* by the Court, according to the order adopting them.

The motion for a new trial is granted.